OVERTON, Justice.
The Florida Bar has petitioned the Court to amend the rules regulating attorney advertising. Notice of the proposed amendments was published in The Florida Bar News. The Court has received responses both in support and in opposition to the proposed changes. We approve, as modified, the Bar’s proposals. We have changed the requirement that only a Florida Bar member be the spokesperson for the firm on television, eliminated the television disclosure, and modified the total prohibition of targeted mail advertising to personal injury and wrongful death claimants. The following is a summary of the Bar’s proposed amendments.
(1) Rule 4-7.1 Communications concerning a lawyer’s services.
Rule 4-7.1 prohibits false or misleading communications and directs that an attorney shall not make “deceptive or unfair” communications. New subsection (d) prohibits the use of testimonials in advertising. The new commentary explains that the rule prohibits all untruthful advertisements, including misleading omissions. The commentary also explains the existing prohibition in paragraph (c) regarding comparisons of one lawyer’s services with other lawyers’ services. It states that the rule prohibits comparisons that cannot be factually substantiated, and it precludes a lawyer from representing that the lawyer or the lawyer’s firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law. The commentary also explains that the rationale for the prohibition in the new paragraph (d), which prohibits endorsements or testimonials, is that they are inherently misleading to laymen.
(2) Rule 4-7.2 Advertising.
Rule 4-7.2(a) clarifies the scope of permitted media advertising. The rule presently allows advertisements in public media such as a telephone directory, legal directory, newspaper or other periodical, radio, and television. The amendment adds billboards and other signs and recorded telephone messages as permissible media. The amendment further explains that the lawyer advertising rules do not apply to advertisements or broadcasts disseminated in other jurisdictions, provided the advertisement complies with the rules governing advertisement in that jurisdiction and is not intended for broadcast in Florida.
Rule 4-7.2(b) applies to electronic media such as radio and television. The rule provides that television and radio advertisements may contain the same factual information and illustrations as are permitted in the print media, but directs that this information shall be articulated by a single voice with no background sound other than instrumental music; that the voice may be that of the lawyer whose services are advertised; that a lawyer may appear on the screen, provided that only lawyers who will provide the advertised services may appear unless the advertisement discloses that others in the firm may also perform the advertised services; that the voice of a recognized celebrity may not be used; and that *453 any person appearing on the television screen must be a member of The Florida Bar.
Rule 4-7.2(c) is not amended.
Rule 4-7.2(d) requires the following disclosure for all advertisements made in the electronic media: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” This disclosure must appear in printed advertisements that contain illustrations or information other than the information listed in rule 4-7.2(n).
Rule 4-7.2(e) prohibits dramatizations in lawyer advertising regardless of the medium utilized.
Rule 4-7.2(f) allows illustrations as long as the information can be factually substantiated and is not self-laudatory.
Rule 4-7.2(g) requires that an advertisement or written communication which indicates one or more areas of law in which the lawyer or law firm practices shall conform to rule 4-7.6, a rule that governs how fields of practice are communicated to the public.
Rule 4-7.2(h) requires every advertisement and written communication containing fee information to disclose whether the client will be liable for any expenses.
Rule 4-7.2(i) requires a lawyer who advertises a specific fee or range of fees for a particular service to honor the advertised prices for at least ninety days, unless a shorter period is specified. If the advertisement appears in the yellow pages of a telephone directory, the lawyer must honor the advertised fee or range of fees for at least one year after the date of publication.
Rule 4-7.2(j) prohibits lawyers from making self-laudatory statements.
Rule 4-7.2(k) prohibits an attorney from advertising services under a name that is deceptive or that implies that the firm is something other than what it is. This rule requires compliance with rule 4-7.7, which regulates firm names.
Rule 4-7.2(Z) provides that all advertisements and written communications must disclose the geographic location of the office of the lawyer who will perform the services advertised.
Rule 4-7.2(m) prohibits a lawyer from funding, all or part of the cost of an advertisement for a lawyer in another firm, unless the advertisement also discloses the name and address of the nonadvertising lawyer and the relationship between the lawyers. This rule addresses the problem of advertising lawyers referring cases to nonadvertising lawyers.
Rule 4-7.2(n) identifies the types of advertising information which are presumed to be proper and directs compliance with rule 4-7.1. The list includes: (1) name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as “attorney” or “law firm”; (2) date of admission to The Florida Bar and any other bars and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice; (3) technical and professional licenses; (4) foreign language ability; (5) fields of law in which the lawyer is certified or designated; (6) participation in prepaid or group legal service plans; (7) acceptance of credit cards; (8) fee for initial consultation and fee schedules; and (9) identification of the lawyer or law firm as a sponsor of a charitable, civic, or community program or event.
Rule 4-7.2(o) authorizes an attorney or law firm to be included in law lists and directories.
Rule 4-7.2(p) requires advertising lawyers to submit a copy or recording of advertisements or written or recorded communications to the Standing Committee on Advertising in accordance with the provisions of rule 4-7.5. The rule also requires the advertising lawyer to keep a record of the advertisement for three years, together with information regarding when and where the advertisement was used.
Rule 4-7.2(q), previously rule 4-7.2(c), prohibits a lawyer from giving anything of value to a person in exchange for that person’s recommending the lawyer’s servic *454 es, except for the reasonable cost of advertising.
The Bar states that rule 4-7.2 is intended to allow advertising that provides useful, factual information presented in a straightforward manner. The commentary explains that the restrictions are designed to ensure that the advertising does not create unreasonable or unrealistic expectations. The Bar notes that these provisions do not apply to communications between lawyers, including brochures for recruitment, or to communications authorized by law such as notice to members of a class in a class action suit.
(3)Rule 4-7.3 Legal service information.
The present rule, in paragraph (a), requires an advertising lawyer or law firm to have available a factual statement detailing the background, training, and experience of the lawyer or law firm. If the lawyer claims specific expertise or publicly limits his or her practice to special types of cases or clients, the lawyer’s experience, background, and training in those types of matters must also be available in a written statement.
The following amendments are proposed for this rule:
Rule 4-7.3(b) requires a law firm which advertises to include in the communication the information described in rule 4-7.3(a).
Rule 4-7.3(c)(4) requires any unsolicited fee contract sent to a prospective client to be clearly marked “Sample” and to have the words “Do Not Sign” printed on the client signature line.
Rule 4-7.3(d) reduces the period of time during which a lawyer or law firm must retain a copy of information furnished to clients from six to three years.
Rule 4-7.3(e) imposes the disclosure requirement of rule 4-7.2(d) upon all advertisements under this rule.
Rule 4-7.3(f) mandates that factual statements shall not directly or impliedly be false or misleading and prohibits statements and omissions that are actually or potentially false or misleading.
(4) Rule 4-7.4 Direct contact with prospective clients.
Rule 4-7.4(a) prohibits an attorney from personally soliciting professional employment from a prospective client for pecuniary gain, contrary to these rules. The proposed amendment explains that a lawyer shall not permit his or her employees or agents to solicit on the lawyer’s behalf. Furthermore, the amendment prohibits a lawyer from entering into an agreement for a fee, or from collecting a fee, for employment obtained in violation of this solicitation rule.
Rule 4-7.4(b)(1) forbids targeted mail advertising to prospective clients if the cause of action relates to personal injury, wrongful death, or other accidents or disasters. The proposed commentary explains that targeted mail solicitation is prohibited only in the areas of personal injury and wrongful death.
Rules 4 — 7.4(c)(1)(a)—(k) specify the requirements of targeted mail communications.
(5) Rule 4-7.5 Evaluation of advertisements.
Rule 4-7.5 provides for review and evaluation of lawyer advertisements and written communications by the Standing Committee on Advertising. Lawyers have the option to submit their advertisements for review either prior to or at the time of the first dissemination of the advertising. The committee will then advise the filing lawyer in writing whether the advertisement complies with the rules. The rule also specifies exemptions and procedural requirements.
(6) Rule 4-7.6 Communications of fields of practice.
Rule 4-7.6 modifies existing rule 4-7.5. Rule 4-7.6 restricts how a lawyer may communicate areas of practice. Paragraph (b) allows a lawyer who complies with the Florida Certification Plan, or who is certified by a national group with substantially similar standards to the Florida Certifica *455 tion Plan, to state in communications to the public that he or she is a specialist in that particular area of certification.
(7) Rule 4-7.7 Firm names and letterheads.
Rule 4-7.7, presently rule 4-7.6, amends paragraph (b), which prohibits attorneys from practicing under a deceptive trade name. The commentary explains that names like “academy” and “institute” are prohibited because they imply that the firm is something other than a law firm. In addition, a firm may not use the name of a person who does not exist or is not associated with the firm, except for deceased members of the firm and former members who are no longer practicing law. Terms such as “legal clinic” or “legal services” are deemed misleading, unless the firm provides routine services at lower fees than the prevailing community rate.
Rule 4-7.7(c) prohibits an attorney from advertising under a trade name unless the attorney practices under that trade name. The commentary explains that an attorney cannot advertise under a contrived name such as “AAA Aardvark Legal Services” in order to obtain an advantageous position in alphabetical listings.
(8) Rule 3-5.1 Types of discipline.
Rule 3-5.1(h) provides sanctions for lawyers found guilty of collecting fees prohibited by the Rules Regulating The Florida Bar, including the advertising rules. The rule requires the lawyer to forfeit the fee or any part thereof to the client or to the Florida Bar Clients’ Security Fund.
(9) Rule 4-1.5 Fees for legal services.
Rule 4-1.5 provides that an attorney shall not enter into an agreement or charge or collect a fee for employment that was obtained through advertising or solicitation in violation of the Rules Regulating The Florida Bar and that such an agreement, if made, is unenforceable.
(10)Chapter 15 Review of Lawyer Advertisements and Solicitations.
Chapter 15 establishes a standing committee on advertising to advise members of the Bar on proposed advertising and solicitation practices and to administer the advertising evaluation program. This chapter also delineates operating procedures for the standing committee on advertising.

The Need for the Proposed Changes

The Bar asserts that these proposed rules can be adopted without violating first amendment commercial free speech principles enunciated by the United States Supreme Court. The Bar argues that current lawyer advertising fails to fulfill the purpose of educating the public and, instead, relies on irrational and often misleading advertising techniques. It contends that the proposed rules will curb advertising abuses and encourage advertising which provides the public with the necessary information to make decisions regarding legal services.
The Bar submits that the proposed rules were developed to address problems found and reported by its Commission on Advertising and Solicitation. The rule changes are intended to correct the following abuses found by the commission under the present rules: (a) advertising that does not convey complete and useful factual information; (b) advertising that misleads consumers or elevates emotional factors over rational decisionmaking factors; (c) overreaching and coercive advertising; (d) electronic broadcast media advertising; and (e) advertising that negatively affects the administration of justice — television and direct mail solicitation of accident victims. The proposals are supported by both the Dade County Trial Lawyers Association and the Academy of Florida Trial Lawyers, who assert that the rules are necessary in order to prevent deception, eliminate serious damage to the judicial system, and place proper controls on the broadcast media.

*456
Responses in Opposition

Numerous parties have filed responses in opposition to the proposed rules. The Florida Association of Broadcasters (The Association) asserts that the restrictive proposals on electronic media are not justified. The Association argues that the restrictions are not narrowly tailored to further a substantial governmental interest, as required by the United States Supreme Court’s decisions in Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), and Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The Association asserts that the disclaimer required by the rules is discriminatory and that the prohibition of techniques such as testimonial advertisements, celebrity endorsements, dramatizations, background music, and illustrations makes legal advertising ineffective. It further argues that the limitation of visual displays is overbroad and that the record does not demonstrate that their use results in deceptive advertising. CBS, Inc., Post-Newsweek Stations of Florida, Inc., and Combined Broadcasting of Miami, Inc., also contend that the proposed rules eliminate the effectiveness of legal advertising and that the record does not demonstrate any type of advertising which is inherently false or misleading.
Other parties in opposition to the proposed rules contend that blanket prohibition of targeted mail in personal injury and wrongful death actions is neither reasonably required nor in accordance with principles established by the United States Supreme Court in Shapero v. Kentucky Bar Association, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988). Citizens Against Censorship argue that the Bar’s record does not support its conclusions and that, if this Court is inclined to consider the evidence, it should do so only after a special master has been appointed to conduct hearings to test the evidence submitted by the Bar.
Hyatt Legal Services argues that the proposed rule which allows only members of The Florida Bar to appear on television conflicts with the rule which permits law firms with offices in more than one jurisdiction to use the same name in each jurisdiction. Hyatt contends that this restriction is not justified by the record and that it is not applied in the other twenty states in which Hyatt has offices. Hyatt also argues that this rule would deny Hyatt Legal Services the use of its sole spokesperson, Joel Hyatt.
Other objections to the proposed rules have been filed.[1]

Commercial Free Speech and Lawyer Advertising

Prior to the 1976 decision in Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), first amendment protection of freedom of speech and of the press had not been utilized to protect commercial advertising. The first amendment was believed to deal only with “speech which bears directly or indirectly upon issues with which voters have to deal,” A. Meiklejohn, Political Freedom 79 (1960). A number of commentators have explained that the first amendment was not intended to protect speech that was not concerned with the processes of political decision-making. Bork, Neutral Principles and Some First Amendment Problems, 47 Ind.L.J. 1 (1971); Jackson & Jeffries, Commercial Speech: Economic Due Process and the First Amendment, 65 Va.L.Rev. 1 (1979) [hereinafter *457 Jackson]. Generally, the first amendment was thought to protect “forms of thought and expression ... from which the voter derives ... the capacity for sane and objective judgment which, so far as possible, a ballot should express.” Meiklejohn, The First Amendment is an Absolute, 1961 Sup.Ct.Rev. 245, 256 (1961). One commentator, in criticizing the commercial free speech doctrine, argued that the guarantee of freedom of the press was intended to assure only that the public has the information necessary for effective self-government and to protect the opportunity for individual self-fulfillment through free expression. Jackson, supra, at 5.
In Virginia Board of Pharmacy, the United States Supreme Court held for the first time that the first amendment protects commercial speech so that consumers can receive the full benefits of a free market. The United States Supreme Court justified its commercial free speech doctrine in Virginia Board of Pharmacy in the following manner:
Our pharmacist does not wish to editorialize on any subject, cultural, philosophical, or political. He does not wish to report any particular newsworthy fact, or to make generalized observations even about commercial matters. The “idea” he wishes to communicate is simply this: “I will sell you the X prescription drug at the Y price.”
425 U.S. at 761, 96 S.Ct. at 1825.
And if [the free flow of commercial information] is indispensable to the proper allocation of resources in a free enterprise system, it is also indispensable to the formation of intelligent opinions as to how that system ought to be regulated or altered. Therefore, even if the First Amendment were thought to be primarily an instrument to enlighten public deci-sionmaking in a democracy, we could not say that the free flow of information does not serve that goal.
425 U.S. at 765, 96 S.Ct. at 1827 (footnote omitted). The significant point about the commercial speech doctrine adopted in this and subsequent United States Supreme Court decisions is that the right involved is that of the consumer to have all information necessary to make an intelligent economic decision, not the right of the advertising business to make a profit, and the government should not interfere with the public in obtaining that information.
In Virginia Board of Pharmacy, the Court stated:
Generalizing, society also may have a strong interest in the free flow of commercial information. Even an individual advertisement, though entirely “commercial,” may be of general public interest. ...
... Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price.
Id. at 764-65, 96 S.Ct. at 1827. The Court, however, emphasized that commercial speech could be restricted more than political speech.
In Bates v. State Bar, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the United States Supreme Court, in applying commercial free speech to lawyer advertising, used Virginia Board of Pharmacy as a basis for its decision. Bates held that states, by their legislatures, courts, or bar associations, could not prohibit lawyers from advertising the prices at which certain routine services will be performed. Id. at 367-68, 97 S.Ct. at 2700-01.
Two points are important to our consideration of the proposed advertising rules. First, in Virginia Board of Pharmacy, the Court stated:
We stress that we have considered in this case the regulation of commercial advertising by pharmacists. Although we express no opinion as to other professions, the distinctions, historical and functional, between professions, may require consideration of quite different factors. Physicians and lawyers, for example, do not dispense standardized products; they render professional services of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception *458 if they were to undertake certain kinds of advertising.
Id. at 773 n. 25, 96 S.Ct. at 1831 n. 25 (emphasis both in original and added). Second, in Bates, the Court stated:
As with other varieties of speech, it follows as well that there may be reasonable restrictions on the time, place, and manner of advertising_ And the special problems of advertising on the electronic broadcast media will warrant special consideration.
433 U.S. at 384, 97 S.Ct. at 2709 (citation omitted, emphasis added).
The proposed rules take into account both of these special problems of lawyer advertising. Since lawyers render professional services which vary from attorney to attorney, case to case, and client to client, the potential for deception and confusion in advertising is great. Reasonable restrictions on the time, place, and manner of legal advertising decrease the possibility of confusion and deception of the public. We find that these rules are tailored to guard against misleading the public and that they do not violate the first amendment commercial free speech doctrine.
We agree with the Bar that certain types of advertising require more restrictions than others; e.g., the electronic broadcast media, if manipulated, can produce unrealistic images and expectations. The proposed rules regarding television advertising concentrate on reducing the effect of technical manipulation. We find that the proposed rules focus on presenting a realistic picture of the attorney and of the services he or she can provide. Both Virginia Board of Pharmacy and Bates recognized the problems inherent in legal advertising. In these cases, the United States Supreme Court allowed the states the freedom to develop rules that would guard against advertising abuses and still provide helpful and useful information to the public.
Since Bates, the United States Supreme Court has rendered six decisions on lawyer advertising.[2] These cases establish more specifically the types of advertising which are protected by commercial free speech, and the regulations which are permitted. One commentator outlined what a state may not do in regulating attorney advertising, under the principles of these cases, as follows:
1. States may not blanketly prevent attorneys from
(1) advertising the costs of certain routine legal services in the print media [Bates ],
(2) advertising an accurate listing of the attorney’s areas of practice, either through general mailings, announcements to specific targeted groups, newspaper ads, or telephone listings [In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982)],
(3) advising target portions of the public of their rights to pursue particular types of cases {e.g., Daikon Shield users) and the attorney’s willingness to handle such litigation [Zauderer],
(4) directly soliciting through the mail clients with a particular legal problem {e.g., impending foreclosures) [Shapero ], or
(5) directly soliciting prospective clients in person, where the attorney is motivated by the desire to promote political and ideological goals, rather than for purely pecuniary gain [In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978)].
Peltz, Legal Advertising — Opening Pandora’s Box?, 19 Stetson L.Rev. 43, 44 (1989) (emphasis in original and added, footnotes omitted) [hereinafter Peltz]. Because of the recent United States Supreme Court decision in Peel v. Attorney Registration & Disciplinary Commission, — U.S. -, 110 S.Ct. 2281, 110 L.Ed.2d 83 *459 (1990), another item should be added to the list: advertising by the lawyer of his or her certification as a trial specialist by a recognized national organization. The same commentator also listed the permitted regulations as follows:
2. States may, however, permissibly
(1) ban in-person solicitation when the attorney is motivated purely for pecuniary gain [Ohralik v. Ohio State Bar Association, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)],
(2) impose certain restrictions on advertising, such as requiring the attorney to
(a) make disclosures concerning his free [sic] arrangements [Zauderer ] or
(b) set forth a disclaimer explaining that the listing of areas of practice does not constitute a certification of expertise [R.M.J.], or
(3) place reasonable restrictions on advertising which are necessary to prevent untruthful, false, deceptive, or misleading statements
Peltz, supra, at 44-45 (footnotes omitted). The following should also be added- to this list because of Peel: place reasonable restrictions on the advertising of certification in a specialty by way of a warning or disclaimer to assure that the consumer is not misled.
We hold that the proposed rules, with three modifications, can be adopted without violating protected commercial speech principles. First, regarding rule 4-7.2(b), we find that any full-time employee of a law firm should be allowed to be a spokesperson for that firm, even if he or she is not a member of The Florida Bar. See Appendix A. This modification is reasonable in light of the multistate nature of many law firms. It also resolves the objection of Hyatt Legal Services. Second, we find that a mandatory disclosure for electronic media contained in rule 4-7.2(d) should not be required, given the other special restrictions on electronic advertising. We do so as a policy decision by this Court and this decision is not dictated by constitutional requirements.
Third, we find that the United States Supreme Court’s decisions in Shape-ro and Peel effectively hold that we cannot totally prohibit targeted mail advertising to victims, claimants, or relatives of individuals involved in personal injury and wrongful death claims, as set out in rule 4-7.-4(b)(1). We reject the Bar’s contention that the Supreme Court’s decision in Board of Trustees v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989), overrules Shapero v. Kentucky Bar Association by implication. We note that Peel, decided after Fox, reaffirmed Shapero. While we cannot prohibit targeted mail advertising for this type of legal work, we can constitutionally restrict it by directing that any mail advertising pertaining to personal injury and wrongful death claims shall be mailed no earlier than thirty days after the incident which precipitated the claim. See Appendix A. We find that the advertising rules, as modified, are tailored to serve the public interest and do not constitute a burden on protected commercial speech.
With regard to the objections made by the media and broadcasting groups, we reject the claims that the Bar’s proposals are unconstitutional. We find that the Bar’s proposals eliminate the “gray areas” that presently allow advertising to project false and misleading messages. The proposed rule constitutionally restricts those methods which, through clever manipulation, could be used to deceive the public.
We find that these proposals guard against intentional omissions by requiring more particular disclosure. We note that the disclosure and disclaimer requirements were expressly approved by five justices [3] in the recent Peel decision. The information required by the proposed rule will be useful to the public in making a decision about legal representation. The commercial free speech doctrine protects the right of the public to receive this information in *460 order to make well-informed decisions regarding legal representation. The economic benefit to the consumer is what is protected, not the economic benefit to the advertising lawyer.
We find that these rules, as modified, are narrowly tailored to further a substantial governmental interest since they propose to ensure the truthful dissemination of information by regulating, not prohibiting, legal advertising. Appended to this opinion are the amended and new Rules Regulating The Florida Bar — Lawyer Advertising. Deletions are indicated by the use of struck-through type. New language is indicated by underscoring.
We approve as modified the rules contained in the attached appendices, and we direct that they become effective at 12:01 a.m. on January 1, 1991.
It is so ordered.
McDonald, EHRLICH and GRIMES, JJ., concur.
SHAW, C.J., concurs in part and dissents in part with an opinion.
BARKETT, J., concurs in part and dissents in part with an opinion, in which SHAW, C.J., and KOGAN, J., concur.
APPENDIX A
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
[[Image here]]
4-7. INFORMATION ABOUT LEGAL SERVICES
RULE 4-7.1 COMMUNICATIONS CONCERNING A LAWYER’S SERVICES
A lawyer shall not make or permit to be made a falsei or misleading, deceptive or unfair communication about the lawyer or the lawyer’s services. A communication is false or misleading violates this rule if it:
(a)Contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(b) Is likely to create an unjustified expectation about results the lawyer can achieve or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; or
(c) Compares the lawyer’s services with other lawyers’ services, unless the comparison can be factually substantiated-; or
(d) Contains a testimonial.
Comment:
This rule governs all communications about a lawyer’s services, including advertising permitted by rule 4-7.2. Whatever means are used to make known a lawyer’s services, statements about them should must be truthful. This includes precludes any material misrepresentation or misleading omissionz such as where a lawyer states .or implies certification or recognition as a specialist other than in accordance with rule 4-7.5, or where a lawyer implies that any court, tribunal or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm which states that all the firm’s lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although rule 4-7.2 permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that he or she is a member of The Florida Bar-Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter two examples of misleading omissions also are examples of unfair advertising.
The prohibition in paragraph (b) of statements that may create “unjustified expectations” would ordinarily precludes adver *461 tisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer’s record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in paragraph (c) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that he or she or his or her law firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law.
The prohibition in paragraph (d) would preclude endorsements or testimonials because they are inherently misleading to a layman untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
RULE 4-7.2 ADVERTISING
(a) Subject to all the requirements of rule 4-7.1 set forth in this subchapter 4-7, including the filing requirements of rule 4-7.5, a lawyer may advertise services through public media, such as a telephone directory, legal directory, newspaper or other periodical, outdoor, billboards and other signs, radio, or television advertising, and recorded messages the public may access by dialing a telephone number, or through written communication not involving solicitation as defined in rule 4-7.4. These rules*shall not apply to any advertisement broadcast or disseminated in another jurisdiction in which the advertising lawyer is admitted if such advertisement compiles with the rules governing lawyer advertising in that jurisdiction and is not intended for broadcast or dissemination within the State of Florida.
(b) Advertisements on the electronic media such as television and radio may contain the same factual information and illustrations as permitted in advertisements in the print media, but the information shall be articulated by a single voice, with no background sound other than instrumental music. The voice may be that of a full-time employee of the firm whose services are advertised; it shall not be that of a celebrity whose voice is recognizable to the public. The lawyer or full-time employee of the firm whose services are being advertised may appear on screen or on radio.
(d){e) Any communieation made pursuant to this — r-ule All advertisements and written communications pursuant to these rules shall include the name of at least one lawyer or the lawyer referral service responsible for its their content.
(d) Except as provided in this paragraph, all advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” This disclosure need not appear in electronic advertisements or advertisements in the public print media that contain no illustrations and no information other than that listed in paragraph (n)(l)— (8) of this rule.
(e) There shall be no dramatization in any advertisement in any medium.
(f) Illustrations used in advertisements shall present information which can be factually substantiated and is not merely self-laudatory.
(g) Every advertisement and written communication that indicates one or more areas of law in which the lawyer or law firm practices shall conform to the requirements of rule 4-7.6.
(h) Every advertisement and written communication that contains information about the lawyer's fee, including those which indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee. Additionally, advertisements and written communications indicating that the charging of a fee is contingent on outcome or that the fee will be a *462 percentage of the recovery shall disclose (1) that the client will be liable for expenses regardless of outcome, if the lawyer so intends to hold the client liable; and (2) whether the percentage fee will be computed before expenses are deducted from the recovery, if the lawyer intends to compute the percentage fee before deducting the expenses.
(i) A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than one year following publication.
(j) A lawyer shall not make statements which are merely self-laudatory or statements describing or characterizing the quality of the lawyer’s services in advertisements and written communications; provided that, this provision shall not apply to information furnished to a prospective client at that person’s request or to information supplied to existing clients.
(k) A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.7.
(l) All advertisements and written communications provided for under these rules shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law. If the office location is outside a city or town, the county in which the office is located must be disclosed.
(m) No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm unless the advertisement discloses the name and address of the nonadvertising lawyer, the relationship between the advertising lawyer and the nonadvertising lawyer, and whether the advertising lawyer may refer any case received through the advertisement to the nonadvertising lawyer-
(n)The following information in advertisements and written communications shall be presumed not to violate the provisions of rule 4-7.1:
(1) Subject to the requirements of this rule and rule 4-7.7, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office addresses and telephone numbers, office and telephone service hours, and a designation such as “attorney” or “law firm.”
(2) Date of admission to The Florida Bar and any other bars and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice.
(3) Technical and professional licenses granted by the state or other recognized licensing authorities.
(4) Foreign language ability.
(5) Fields of law in which the lawyer is certified or designated, subject to the requirements of rule 4-7.6.
(6) Prepaid or group legal service plans in which the lawyer participates.
(7) Acceptance of credit cards.
(8) Fee for initial consultation and fee schedule, subject to the requirements of paragraphs (h) and (i) of this rule.
(9) A listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic or community program or event.
(o)Nothing in this rule prohibits a lawyer or law firm from permitting the inclusion in law lists and law directories intended primarily for the use of the legal profession of such information as has^ traditionally been included in these publications.
(b) (p) A c°py or recording of an advertisement or written or recorded communication shall be kept submitted to the Standing Committee on Advertising in accordance with the requirements of rule 4-7.5, and the lawyer shall retain a copy or recording for three (3) years after its last dissemination along with a record of when and where it was used.
*463 (e) (q) A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reasonable cost of advertising or written or recorded communication permitted by these rules and may pay the usual charges of a lawyer referral service or other legal service organization.
Comment:
To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary-to the tradition that a lawyer should not-seek clientele. However, tThe public’s need to know about legal services can be fulfilled in part through advertising which provides the public with useful, factual information about legal rights and needs and the availability and terms of legal services from a particular lawyer or law firm. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services- ought to prevail over considerations of tradition. Nevertheless, certain types of advertising by lawyers entails create the risk of practices that are misleading or overreaching and can create unwarranted expectations by laymen untrained in the law. Such advertising can also adversely affect the public’s confidence and trust in our judicial system.
In order to balance the public’s need for useful information, the state’s need to ensure a system by which justice will be administered fairly and properly, as well as the state’s need to regulate and monitor the advertising practices of lawyers, and a lawyer’s right to advertise the availability of the lawyer’s services to the public, Tthis rule permits public dissemination of information concerning a lawyer’s name or firm name, address, and telephone number; the kinds of services the lawyer' will undertake; the basis on which the lawyer’s fees are determined, including prices for specific services and payment and credit arrange-
ments; a lawyer’s foreign language ability; names of references and, with their consent, names of clients regularly represented; and other factual information that might invite the attention of those seeking legal assistance.
Questions 0⅛ effectiveness and-taste-in advertising are- matters of-speculation and subjective judgment* Television is now one of the most powerful media for getting conveying information to the public^ particularly- persons of-low and moderate -income; — prohibiting a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the-information that may be advertised has a--similar- effect and assumes that the-bar-can accurately-forecast ⅛6’ kind of information that the public would regard as relevant. However, the content-and format of a legal advertisement-should-eomport with the dignity of the profession- and promote public confidence in our legal system, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media are abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote the public’s confidence in the legal profession and this country’s system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
Paragraphs (b) and (e) of this rule are designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer may be able to ob *464 tain in any particular ease, and to encourage a focus on providing useful information to the public about legal rights and needs and the availability and terms of legal services. Thus, the rule allows all lawyer advertisements in which the lawyer personally appears to explain a legal right, the services the lawyer is available to perform, and the lawyer’s background and experience.
The prohibition in paragraph (b) against any background sound other than instrumental music precludes, for example, the sound of sirens or car crashes and the use of jingles. Paragraph 4-7.1(d) forbids use of testimonials or endorsements from clients or anyone else. Paragraph (e) prohibits dramatizations in any advertisement, including those appearing on the electronic media. This is intended to preclude the use of scenes creating suspense, scenes containing exaggerations or situations calling for legal services, scenes creating consumer problems through characterization and dialogue ending with the lawyer solving the problem, and the audio or video portrayal of an event or situation. While informational illustrations may attract attention to the advertisement and help potential clients to understand the advertisement, self-laudatory illustrations are inherently misleading and thus prohibited. As an example, a drawing of a fist, to suggest the lawyer’s ability to achieve results, would not be informational and would be barred.
Regardless of medium, a lawyer’s advertisement should provide only useful, factual information presented in a nonsensational manner. Advertisements utilizing slogans or jingles, gimmicks,-or-other garish techniques, or fee use of-large oversized electrical and neon signs, -soundtracks, or sound trucks, or other extravagant media, fail to meet these standards and diminish public confidence in the legal system.
The disclosure required by paragraph (d) of this rule is designed to encourage the informed selection of a lawyer. As provided in rule 4-7,3, a prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus in print advertisements, the type size used for the disclosure must be sufficient to cause the disclosure to be conspicuous; in recorded advertisements the disclosure must be spoken at a speed that allows comprehension by the average listener. This rule does not specify the exact type size to be used for the disclosure or the exact speed at which the disclosure may be spoken; good faith and common sense should serve as adequate guides for any lawyer.
Neither this rule nor rule 4-7.4 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
Record of advertising
Paragraph (b) requires that a record of the content -and use of advertising-be kept in-order to-facilitate enforcement of this rale. — It does not require-that advertising be subject to review prior to dissemination. Such a requirement would be burdensome and-expensive'relative to its- possible benefits, and may-be of doubtful constitutionality
This rule applies to advertisements and written communications directed at prospective clients and concerning a lawyer’s or law firm’s availability to provide legal services. The rule does not apply to communications between lawyers, including brochures used for recruitment purposes.
Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule, but otherwise is not permitted to pay or provide other tangible benefits to another person for channel-feg procuring professional work. This restriction does not prevent-an organization or-person other than the lawyer from advertising or -recommending the lawyer’s *465 services. Thus, However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however to the limitations imposed by rule 4-7.78. Paragraph (e) (q) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
RULE 4-7.3 LEGAL SERVICE INFORMATION
(a) Each lawyer or law firm that advertises his, her, or its availability to provide legal services shall have available in written form for delivery to any potential client:
(1) A factual statement detailing the background, training and experience of each lawyer and or law firm.
(2) If the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer's or law firm’s practice to special types of cases or clients, the written information shall set forth the factual details of the lawyer’s experience, expertise, background, and training in such matters.
(b) A lawyer or law firm that advertises services by written communication not involving solicitation, as defined in rule 4-7.4, shall enclose with each such written communication the information described in paragraph (a) of this rule.
(b) (c) Whenever a potential client shall request information regarding a an advertising lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in paragraph (a).
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services which will require that the client read and sign a copy of the “Statement of Client’s Rights” as required by these rules, then a copy of such statement shall be furnished contemporaneously with the above information.
(4)If the information furnished to the client includes a fee contract, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size one size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
(e) (d) A sample copy of the all information furnished to clients by reason of this rule shall be retained by the lawyer or law firm for a period of six-(6) three years after last regular use of the information.
(d) (e) If the lawyer or law firm advertises its services pursuant to rule 4-7.2, the or makes a written-communication not involving solicitation-as -defined in rule 4-7.4, the availability of-the information delineated in this rule shall-be- included in the advertising or written-communication in the following manner: advertisement shall contain the disclosure set forth in rule 4-7.2(d) unless exempt by the terms of that rule. This disclosure need not appear in written communications under rule 4-7.4, which must be accompanied by a copy of the statement of qualifications and experience described in paragraph (a) of this rule.
(1) Television, radio,--and-all other -electronic advertising sball-contain a prominent display-or announcement which states substantially the following: “Free Information Concerning Qualifications and Experience Available on Request.”-
(2) Each page of any telephone or other commercial — directory—concerning display type advertising-shall-contain, at the top, the^ statement: “You may obtain free written — information regarding the qualifications and exper-ience-of any (this) lawyer or law-firm by calling or writing to the lawyer or — law—firm—during—regular—business hours.” The cost-if-any,-of the publication of such statement shall be shared pro rata by all lawyers or law firms purchasing display- advertising.
*466 (3)All other print or display advertising of any kind-shall-prominently contain-the statement set forth in the preceding-paragraph.
(e) (fj Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under this rule shall not be:
(1) Be Bdirectly or impliedly false or misleading;
(2) Be potentially Impliedly false or misleading;
(3) Fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(4) Be Uunsubstantiated in fact; or
(5) Be Uunfair or deceptive.
(f) (g) Upon reasonable request by t The Florida Bar, a lawyer shall promptly provide proof that any statement or claim made in any advertisement or written communication, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with paragraph (e) (f) above.
(g) £h) A statement and any information furnished to a prospective client, as authorized by paragraph (a) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer or law firm not associated with the originally retained lawyer or law firm or another law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading in this respect, the history of prior conduct by the lawyer in similar matters may be considered. Comment:
Consumers and potential clients have a right to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The rule provides that potential clients may request such information and be given an opportunity to review that information without being required to come to a lawyer’s office to first obtain that information it. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients’ having factual information at their disposal for review and comparison.
RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) A lawyer may shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by tele-phonej or telegraph, or facsimile, or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient and not meeting the requirements of paragraph (b) of this rule.
(b) Written Communication.
(2) (1) A lawyer shall not send, or knowingly permit to be sent, on behalf of himself, his firm, his partner, an associate, or any other lawyer affiliated with him or his firnq a written communication to a prospective client for the purpose of obtaining professional employment if:
a. The written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of 'that person, unless the accident or disaster occurred more than thirty days prior to the mailing of the communication;
aA. The written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
br c. It has been made known to the lawyer that the person does not want to *467 receive such communications from the lawyer;
Cr d. The communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
dr e. The communication contains a false, fraudulent, misleading, or deceptive, or unfair statement or claim or is improper under rule 4-7.1; or
⅛ f. The lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(1) (2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
a. Each page of Ssuch written communications shall be plainly marked “advertisement” on the face of the envelope and in red ink, at the top of each page of the written communication.-in.type-one — size larger- than the ■ largest-type-used — in—the written communication, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
b. A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be sent to staff counsel at-bar-headquarters and another copy shall be retained by the lawyer for three (3) years, filed with the Standing Committee on Advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rule 4-7.5. The lawyer also shall retain a copy of each written communication for three years. If written communications identical in content are sent to two (2) or more prospective clients, the lawyer may comply with this requirement by sending filing a single copy together with a list of the names and addresses of persons to whom the written communication was sentz to-staff -counsel at bar headquarters as well as retaining the same information. If the lawyer periodically sends the identical communication to additional prospective clients, lists of the additional names and addresses shall be filed with the committee no less frequently than monthly.
c. Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
d. No reference shall be made in the communication to the communication having received any kind of approval from The Florida Bar.
e. Every written commimication shall be accompanied by a written statement of the lawyer or law firm’s qualifications conforming to the requirements of rule 4-7.3.
f. If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size one size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line.
g. The first sentence of any written communication concerning a specific matter shall be: “If you have already retained a lawyer for this matter, please disregard this letter.”
h. Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
i. If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case or matter will be referred to another lawyer or law firm, any written communication concerning a specific matter shall include a statement so advising the client.
j. Any written communication prompted by a specific occurrence involving or affect *468 ing the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication.
k. A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client’s legal problem.
Comment:
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the lay person to the private importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the thirty-day restriction, particularly since lawyer advertising permitted under rule 4-7.2 offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications in violation of rule 4-7.1. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or over-reaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. T-hus-,-it-is-appmpr-iate-to-limit-the-circum-stances-under which-such-direst-contaet-is permitted; — require—the—identification—of such-communication - by nature; — and -require the keeping-of a record of such direct contact for a reasonable period of time. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action which relate to an accident, disaster, death or injury, but only if mailed at least thirty days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving the loss of a family member, and the abuses which experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes should be clearly marked “advertisement.” This will avoid the recipient perceiving that he or she needs to open the envelope because it is from a lawyer or law firm, only to find he or she is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to *469 understand the extent of knowledge the lawyer or law firm has regarding his or her particular situation and will avoid misleading the recipient .into believing that the lawyer has particularized knowledge about the recipient’s matter if he does not.
Similarly, tThis rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or his or her firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer.- Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under rule 4-7.2.
RULE 4-7.5 EVALUATION OF ADVERTISEMENTS
(a) A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication with these rules in advance of disseminating the advertisement or communication by submitting the material and fee specified in paragraph (d) to the Standing Committee on Advertising at least fifteen days prior to such dissemination. If the committee finds that the advertisement complies with these rules, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in paragraph (b) of this rule.
(b) Subject to the exemptions stated in paragraph (c) of this rule, any lawyer who advertises services through any public media or through written communication not involving solicitation as defined in rule 4-7.4 shall file a copy of each such advertisement with the Standing Committee on Advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer's first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in paragraph (d).
(c) Exempt from the filing requirements of paragraph (b) of this rule are:
(1) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in rule 4-7.2(n)(l)-(8). This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(2) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a specified charitable, community or public interest program, activity or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution.
(3) A listing or entry in a law list.
(4) A newsletter mailed only to existing clients or other lawyers.
(5) Professional announcement cards stating new or changed associations, new offices, and similar changes relating to a lawyer or law firm, and which are mailed only to other lawyers, relatives, close personal friends, and existing clients.
(d) A filing with the committee as required by paragraph (b) or as permitted by paragraph (a) shall consist of:
(1) A copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
(2) A transcript, if the advertisement or communication is on videotape or audiotape;
*470 (3) A statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(4) A fee of twenty-five dollars, made payable to The Florida Bar. This fee shall be used only for the purposes of evaluation and review of advertisements under these rules and for the related purpose of enforcing these rules.
(e) The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within fifteen days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot be completed within the fifteen-day period, and so advises the lawyer within the fifteen-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the lawyer within fifteen days, the advertisement will be deemed approved.
(f) If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer's advertisement or written communication.
(g) When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination or continued dissemination of the advertisement or written communication may result in professional discipline.
(h) A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(i)If a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and a fee of twenty dollars.
Comment:
This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee’s opinion will be advisory only, but may be considered as evidence of a good faith effort to comply with these rules. A lawyer who wishes to be able to rely on the committee’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
RULE 4-7.56 COMMUNICATION OF FIELDS OF PRACTICE
A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:
(a) A lawyer admitted to engage in patent practice before the United States patent and trademark office may use the designation “patent attorney” or a substantially similar designation;
(b) A lawyer engaged in admiralty practice may use the designation “admiralty,” “proctor-in admiralty,” or a substantially similar-designation;
*471 (e) (b) A lawyer who complies with the Florida Certification Plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by a national group which has standards for certification substantially the same as those set out in chapter 6, may inform the public and other lawyers of his or her certified areas of legal practice and may state in communications to the public that the lawyer is a “specialist in (area of certification)”; and
(d) (c) A lawyer who complies with the Florida Designation Plan as set forth in chapter 6, Rules Regulating The Florida Bar, may inform the public and other lawyers of his or her designated areas of legal practice.
Comment:
This rule permits a lawyer to indicate areas of practice in communications about the lawyer’s services^ for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or a national group having substantially the same standards may describe himself or herself to the public as a “specialist” or as “specializing.”
Recognition of specialization in patent matters is-a-matter-of-long-established policy of the -patent and trademark office. Designation of admiralty- practice has a long historical tradition- associated with maritime commerce and-the federal courts.
RULE 4-7.€7 FIRM NAMES AND LETTERHEADS
(a) A lawyer shall not use a firm name, letterhead, or other professional designation that violates rule 4-7.1.
(b) A trade name may be used by-a-lawyer in private practice A lawyer may practice under a trade name if ft the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of rule 4-7.1. A lawyer in private practice may use the term “legal clinic” or “legal services” in conjunction with the lawyer’s own name if the lawyer’s practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c)A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by paragraph (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer's letterhead, business cards, office sign, and fee contracts, and appears with the lawyer’s signature on pleadings and other legal documents.
(b) (d) A law firm with offices in more than one jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) (e) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(dj (f) Lawyers may state or imply that they practice in a partnership or other organization only when that is the fact. Comment:
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm’s identity or by a trade name such as the “ABC Family Legal Clinic.” Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as “Springfield Legal Clinic,” an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may *472 be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Paragraph (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are “academy” and “institute.” Paragraph (b) precludes use of a trade or fictitious name suggesting that the firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is “A. Aaron Able.” Although not prohibited per se, the terms “legal clinic” and “legal services” would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Paragraph (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and rule 4-7.1.
With regard to paragraph (d), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, “Smith and Jones,” for that title suggests partnership in the practice of law.
RULE 4-7.78 LAWYER REFERRAL SERVICES
[[Image here]]
APPENDIX B
CHAPTER 3. RULES OF DISCIPLINE
[[Image here]]
3-5. TYPES OF DISCIPLINE
RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(i) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients’ Security Fund and disbursed in accordance with its rules and regulations.
APPENDIX C
CHAPTER 4. RULES OF PROFESSIONAL CONDUCT
[[Image here]]
4-1. CLIENT-LAWYER RELATIONSHIP
[[Image here]]
RULE 4-1.5 FEES FOR LEGAL SERVICES
(A) An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
[[Image here]]
(D) Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, *473 prohibited by this rule, or clearly excessive as defined by this rule.
[[Image here]]
APPENDIX D (ALL NEW)
CHAPTER 15. REVIEW OF LAWYER ADVERTISEMENTS AND SOLICITATIONS
15-1. GENERALLY
RULE 15-1.1 PURPOSE
The Florida Bar, as an official arm of the Supreme Court of Florida, is charged with the duty of enforcing the rules governing lawyer advertising and solicitation and with assisting members of The Florida Bar to advertise their services in a manner beneficial to both the public and the legal profession. The board of governors, pursuant to the authority vested in it under rule 2-8.3, shall create a Standing Committee on Advertising to advise members of The Florida Bar on permissible advertising and solicitation practices. It shall be the duty of the committee to administer the advertising evaluation program set forth in rule 4-7.5.
15-2. STANDING COMMITTEE ON ADVERTISING
RULE 15-2.1 MEMBERSHIP AND TERMS
The Standing Committee on Advertising shall consist of four members of The Florida Bar and three nonlawyers representing the public. Members of the committee shall be appointed by the president-elect of The Florida Bar, as provided in rule 2-8.1. The president-elect shall designate the chairman and vice chairman, with the advice and consent of the board of governors. Members of the committee shall serve staggered three-year terms. No member may serve more than two consecutive terms. A quorum shall consist of a majority of the members.
RULE 15-2.2 FUNCTIONS
It shall be the task of the committee to evaluate all advertisements filed with the committee for compliance with the rules governing advertising and solicitation and to provide written advisory opinions concerning compliance to the respective filers; to develop a handbook on advertising for the guidance of and dissemination to members of The Florida Bar; and to recommend to the board of governors from time to time such amendments to the Rules of Professional Conduct as the committee may deem advisable.
RULE 15-2.3 REIMBURSEMENT FOR PUBLIC MEMBERS
The nonlawyer public members of the statewide committee shall be reimbursed for reasonable travel and related expenses associated with attendance at meetings of the committee.
RULE 15-2.4 RECUSAL OF MEMBERS
Members of the committee shall recuse themselves from consideration of any advertisement proposed or used by themselves or other lawyers in their firms.
15-3. PROCEDURE
RULE 15-3.1 MEETINGS
The committee shall meet as often as is necessary to fulfill its duty to provide a prompt opinion regarding a submitted advertisement’s compliance with the advertising and solicitation rules.
RULE 15-3.2 RULES
The committee may adopt such procedural rules, subject to review by the board of governors, for its activities as may be required to enable the committee to fulfill its function.
15-4. REPORT OF COMMITTEE
RULE 15-4.1 GENERALLY
Within three months after the conclusion of the first year of the review program, the committee shall submit to the board of governors a report detailing the year’s activities of the committee. The report shall include such information as the board of governors may require.
RULE 15-4.2 RECORDS
The committee shall keep records of its activities for three years.

. Objections have been filed by George W. Salter, Ronald J. Schweighardt, Samuel W. Bear-man, Lars A. Lundeen, William P. Matturro, Frank Mallory Shooster, The American Association of Advertising Agencies, Inc., David W. Singer, Jon H. Gutmacher, Wilson Jerry Foster, John T. Blakely, Florida Association of Broadcasters, National Association of Broadcasters, Scripps-Howard Broadcasting Co., Fourth District American Advertising Federation, Florida/Carribean, Inc., American Advertising Federation, Phipps-Potamkin Television Partners, John H. Phipps, Inc., Southwest Florida Broadcasters Association, Wabash Valley Broadcasting Corp., Southern Broadcasting Corp. of Sarasota, South Florida Radio Broadcasters Association, Ft. Myers Broadcasting Co., John T. Cook, Robert H. Kennedy, Bruce A. McDonald, Robert S. Schlorff, Steven C. Blinn, Robert D. Melton, and Bruce L. Scheiner.

. Ohralik v. Ohio State Bar Ass’n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); In re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978); In re R.M.J., 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982); Zauderer v. Office of Disciplinary Council, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Shapero v. Kentucky Bar Ass’n, 486 U.S. 466, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988).

. Chief Justice Rehnquist, Justice O’Connor, and Justice Scalia concurred in Justice White's dissent. Justice Marshall specially concurred.