**G. Stewart McHENRY, Went For It, Inc., a Florida Corporation, John T. Blakely, Plaintiffs–Appellees,**

v.

**THE FLORIDA BAR, Susan V. Bloemendaal, Defendants– Appellants.**

**No. 93–2069.**

United States Court of Appeals, Eleventh Circuit.

May 10, 1994.

---

Barry Richard, Tallahassee, FL, for appellants.

Paul D. Kamenar, Washington, DC, for amicus curiae, Washington Legal Foundation/Allied Educational.

Bruce S. Rogow, Beverly A. Pohl, Ft. Lauderdale, FL, for appellees.

Before BLACK, Circuit Judge, DYER, Senior Circuit Judge, and ALAIMO *, Senior District Judge.

BLACK, Circuit Judge:

The question in this appeal is whether The Florida Bar's thirty-day ban on direct mail lawyer advertising soliciting personal injury and wrongful death clients violates commercial speech protections afforded attorney advertising under the First Amendment. The district court ruled that it does. We affirm.

## I.

Subject to approval by the Florida Supreme Court, The Florida Bar (Bar) promulgates rules that regulate the manner in which Florida lawyers may contact prospective clients for the purpose of obtaining professional employment. See R. Regulating Fla. Bar 4–7.1 to –7.7 (Rules). The Rules generally prohibit lawyers from in-person, telephone, telegraph, or facsimile solicitation of prospective clients with whom the lawyer

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

has no family or prior professional relationship. *Id.* at 4–7.4(a).[1] The Rules permit direct mail solicitation of prospective clients except under certain conditions, *id.* at 4–7.4(b)(1), and provide specific requirements that must be followed when lawyers solicit clients through the mail, *id.* at 4–7.4(b)(2). Client solicitation rules apply indirectly to lawyer referral services through the Bar's prohibition on lawyers accepting referrals from services that contact potential clients in a manner that would violate the Rules if the contact was made by a lawyer. *Id.* at 4–7.8(a)(1).[2]

Appellee McHenry, a member of The Florida Bar when he filed this suit, regularly solicited personal injury and wrongful death clients via direct mail before being disbarred for acts unrelated to the facts of this case.[3] New rules regarding client solicitation by mail took effect in January 1991,[4] including a new rule that prohibits lawyers from using direct mail to solicit personal injury or wrongful death clients "unless the accident or disaster [for which representation is sought] occurred more than 30 days prior to the mailing of the communication." *Id.* at 4–7.4(b)(1)(A).[5] McHenry and Went For It, Inc. (WFI), a lawyer referral service owned by McHenry, sued the Bar to enjoin enforcement of Rule 4–7.4(b)(1)(A), asserting that, but for its prohibition, they would send such letters within thirty days of an accident or disaster.[6]

1. Rule 4–7.4, Direct Contact with Prospective Clients, reads in pertinent part:

    **(a) Solicitation.** A lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.... The term "solicit" includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule.

2. Rule 4–7.8, Lawyer Referral Services, reads in pertinent part:

    **(a) When Lawyers May Accept Referrals.** A lawyer shall not accept referrals from a lawyer referral service unless the service:

    (1) engages in no communication with the public and in no direct contact with prospective clients in a manner that would violate the Rules of Professional Conduct if the communication or contact were made by the lawyer.

3. *The Florida Bar v. McHenry,* 605 So.2d 459 (Fla.1992).

4. *The Florida Bar: Petition to Amend the Rules Regulating The Florida Bar—Advertising Issues,* 571 So.2d 451, 460 (Fla.1990) (*Petition—Advertising Issues*). The Bar petitioned the Florida Supreme Court to amend the rules regulating attorney advertising. The Court approved the Bar's proposed rules with certain modifications. *Id.*

5. The Bar originally proposed to the Florida Supreme Court a total prohibition of all direct mail advertising targeted to potential personal injury or wrongful death clients. *Petition—Advertising Issues,* 571 So.2d at 459. The Court disapproved the proposal, acknowledging that United States Supreme Court precedent prohibited such a ban. *Id.* The Florida Supreme Court held, however, that it could constitutionally "restrict [such advertising] by directing that any mail advertising pertaining to personal injury and wrongful death claims shall be mailed no earlier than thirty days after the incident which precipitated the claim." *Id.* The Court modified the Bar's proposal and instituted the thirty-day ban. *Id.*

6. Appellees do not challenge any other Bar rules regarding client solicitation by mail. We presume, without deciding the constitutional validity of any other rules, that the letters they propose to send will comply with all other regulations established in Rule 4–7.4(b), including:

    (1) no letters will be sent to persons known to be represented by another attorney in the matter;

    (2) no letters will be sent to persons who have made it known to the sender that they do not want to receive such communication;

    (3) no letters will subject the recipient to coercion, duress, fraud, overreaching, harassment, intimidation or undue influence;

    (4) no letters will contain false, deceptive, or unfair statements or claims;

    (5) no letters will be sent if the sender knows or reasonably should know that the physical, emotional or mental state of the recipient makes it unlikely that the recipient would exercise reasonable judgment in employing a lawyer;

    (6) the face of every envelope will be marked in red with the word "advertisement," and every page of any letter sent will be similarly marked;

    (7) a copy of the letter and envelope will be sent to the designated committee of the Bar and retained by the sender as required;

    (8) letters will be sent by regular U.S. mail only, not by any other means;

    (9) letters will contain no reference suggesting that the letter has been approved by the Bar;

    (10) the appropriate statement of qualifications will accompany each letter sent;

McHenry's suit became moot when he was disbarred. WFI continued as a plaintiff because it alleged injury in fact from the indirect application of the thirty-day ban to it through Rule 4–7.8(a)(1).[7] WFI maintains that the thirty-day ban is an unconstitutional restriction on commercial speech in violation of the First Amendment. The Bar submits that the ban serves substantial governmental interests that justify the restriction on speech. In addition, the Bar maintains that the ban is a content-neutral time, place, and manner restriction on speech.

All parties agreed that there were no genuine issues of material fact for trial and submitted cross motions for summary judgment. The district court referred the case to a magistrate judge, who found that the thirty-day ban on direct mail solicitation of personal injury and wrongful death clients withstood constitutional scrutiny and recommended that summary judgment be granted in favor of the Bar. On review of the magistrate judge's report and recommendation, the district court disagreed. It held that the ban violated constitutional protections of free speech and granted summary judgment in favor of WFI. 808 F.Supp. 1543.

## II.

In 1977, the Supreme Court first ruled that states could not prohibit certain truthful advertising by lawyers concerning the availability and price of legal services. *Bates v. State Bar*, 433 U.S. 350, 384, 97 S.Ct. 2691, 2709, 53 L.Ed.2d 810 (1977). Subsequently, the Supreme Court has held that states may ban completely a lawyer's in-person solicitation of clients to prevent the potential for overreaching, undue influence, and intimidation on members of the public that is present when "a professional trained in the art of persuasion, personally solicits an unsophisticated, injured, or distressed lay person." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 464–68, 98 S.Ct. 1912, 1923–25, 56 L.Ed.2d 444 (1978). States may not, however, ban outright the use of direct mail by attorneys to solicit clients known to be in need of legal services. *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 473, 108 S.Ct. 1916, 1921–22, 100 L.Ed.2d 475 (1988).

Today, "[l]awyer advertising is in the category of constitutionally protected commercial speech." *Id.* at 472, 108 S.Ct. at 1921. As such, lawyer advertising "that is not false or deceptive and does not concern unlawful activities ... may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2275, 85 L.Ed.2d 652 (1985). In further defining the connection between the means chosen to advance the government interest in regulating commercial speech and the interest itself, the Supreme Court has explained that the means must simply fit:

a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the

(11) the first sentence of the letter will be "If you have already retained a lawyer for this matter, please disregard this letter";

(12) the letter will look like a letter, not a pleading or other legal document;

(13) if the matter will be handled by a lawyer other than the lawyer sending the letter, a statement to that effect will be included;

(14) the letter will disclose how the sender obtained information about the recipient's involvement in the accident or disaster that prompted the letter; and

(15) the nature of the recipient's legal problem will not be revealed on the outside of the envelope.

**7.** The Washington Legal Foundation and The Allied Educational Foundation submitted an *amici curiae* brief to this Court asserting that WFI lacked standing independent of McHenry to maintain this suit in the district court. The Bar and WFI both maintain that jurisdiction is proper despite the mootness of McHenry's claim. We are persuaded that WFI alone has standing to bring this claim. *See Cone Corp. v. Florida Dep't of Transp.*, 921 F.2d 1190, 1204 (11th Cir.), *cert. denied*, 500 U.S. 942, 111 S.Ct. 2238, 114 L.Ed.2d 479 (1991). In addition, on limited remand from this Court, the district court granted WFI's unopposed motion to add Appellee Blakely, a member of The Florida Bar, as a party Plaintiff. Blakely asserts that, but for Rule 4–7.4(b)(1)(A), he would engage in direct mail solicitation of clients during the thirty-day period. Thus, even if WFI lacked standing, Appellee Blakely has standing to challenge the thirty-day ban on direct mail advertising.

least restrictive means but ... a means narrowly tailored to achieve the desired objective.

*Board of Trustees v. Fox,* 492 U.S. 469, 480, 109 S.Ct. 3028, 3035, 106 L.Ed.2d 388 (1989) (citation and internal quotation omitted). Because there is no suggestion that Appellee's proposed direct mail solicitations will be false or deceptive, the Bar must demonstrate that its thirty-day ban serves a substantial government interest and is narrowly tailored to achieve that interest.

The Bar submits that two substantial governmental interests are served by the thirty-day ban: (1) protecting persons traumatized by recent injury to themselves or members of their family who are likely to be in a state of mind which inhibits objective evaluation of a personalized solicitation from a lawyer, and (2) protecting the personal privacy and tranquility of persons who were themselves, or whose loved ones were, recent victims of personal injury or death. We conclude that neither of these asserted interests justifies a thirty-day ban on otherwise constitutionally protected direct mail advertising by attorneys.

### A.

█ In *Shapero,* the Supreme Court rejected the assertion that a state could ban truthful, direct mail solicitation of persons overwhelmed by legal troubles because their capacity to exercise good judgment in selecting a lawyer was assertedly impaired. 486 U.S. at 474, 108 S.Ct. at 1922. In that case, the Kentucky Bar Association denied approval of a truthful letter that an attorney proposed to send to potential clients he learned had a foreclosure suit filed against them. *Id.* at 469, 108 S.Ct. at 1919. The Court first noted that Kentucky could not constitutionally prohibit the attorney from sending a nearly identical letter, suggesting his services if the need should ever arise, to an at-large audience *not* known to need representation. *Id.* at 473, 108 S.Ct. at 1921. Turning to the

targeted nature of the solicitation, the Court explained that "the First Amendment does not permit a ban on certain speech merely because it is more efficient." *Id.* at 473, 108 S.Ct. at 1922.

The Court further recognized that persons overwhelmed to the degree that their capacity for good judgment is impaired would have the same impairment whether evaluating an attorney's newspaper advertisement, a general solicitation letter, or a targeted solicitation letter. *Id.* The Court thus concluded that "[t]he relevant inquiry is not whether there exist potential clients whose 'condition' makes them susceptible to undue influence, but whether the mode of communication poses a serious danger that lawyers will exploit any such susceptibility." *Id.* Targeted direct mail advertising, the mode of communication in *Shapero* and in this case, " 'poses much less risk of overreaching or undue influence' than does in-person solicitation." *Id.* (quoting *Zauderer,* 471 U.S. at 642, 105 S.Ct. at 2277).

As the Court pointed out, a letter does not present " 'the coercive force of the personal presence of a trained advocate' or the 'pressure on the potential client for an immediate yes-or-no answer to the offer of representation.' " *Id.* Letter recipients can merely avert their eyes to avoid bombardment of their sensibilities, put the letter in a drawer to consider or ignore later, or simply throw the letter away.[8] *Id.* 486 U.S. at 475–76, 108 S.Ct. at 1923. Given the greatly reduced potential for coercion presented by a letter, the Court held that Kentucky's total ban on direct mail advertising was an unconstitutional restriction on commercial speech. *Id.*

While all the potential clients targeted in *Shapero* were assertedly unable to exercise unimpaired judgment due to the overwhelming nature of pending foreclosure litigation, some of the potential clients in this case are assertedly overwhelmed by different circumstances, such as injury to themselves or fami-

---

8. These recipient responses become even more likely, and the potential for undue influence is even further reduced, when the letter bears the

inscription "advertising material" in red on the envelope and on each internal page, as required

ly members, or even the loss of a loved one.[9] The cause of the potential client's assertedly impaired judgment, however, is inconsequential to our inquiry under *Shapero*. The relevant inquiry is the *mode* of communication. *Id.* at 474, 108 S.Ct. at 1922. A letter, especially a letter marked "advertising material" in red, possesses limited potential for overreaching, whether the potential client is overwhelmed by pending litigation, personal injury, or grief. *See id.*

In addition, the Bar notes that, while the ban held unconstitutional in *Shapero* was total, the ban under Rule 4–7.4(b)(1)(A) lasts for only thirty days. We find nothing in *Shapero* to suggest that states may impose such a moratorium on direct mail solicitation. The Bar maintains, nonetheless, that its thirty-day ban is justified by the assertedly heightened sensitivities of some potential recipients in the immediate aftermath of a tragedy.[10] Even if *Shapero* could be read to support restrictions based upon the letter recipient's sensitivity, we are not persuaded that the heightened sensitivity of some potential recipients justifies a prophylactic rule such as this.[11] This is especially true consid-

ering that the period immediately following an accident or disaster may well be the time when the need for legal advice is most pressing.[12] "[T]he State may not constitutionally ban a particular letter on the theory that to mail it only to those whom it would most interest is somehow inherently objectionable." *Shapero*, 486 U.S. at 473, 108 S.Ct. at 1922. We conclude, therefore, that the Bar's first asserted substantial interest fails, under *Shapero*, to justify the thirty-day ban on attorney direct mail solicitation of potential personal injury and wrongful death clients.

### B.

The Bar also asserts that the thirty-day ban serves a substantial state interest by protecting the personal privacy and tranquility of persons who were themselves, or whose loved ones were, recent victims of personal injury or death. We recognize that the intrusion of Appellee's letters upon grief-stricken recipients may be offensive. We also appreciate the Bar's attempt to protect an individual's personal privacy, and to preserve the integrity of the legal profession, by eliminating offensive solicitations such as

in Florida. *See* R. Regulating Fla. Bar 4–7.4(b)(2)(A).

9. We note that, although all the potential clients in *Shapero* faced legal difficulties of the same magnitude (a foreclosure suit), some of the potential clients targeted by Appellees in this case will suffer from relatively minor injuries, while others no doubt will have injuries that are more severe. Nevertheless, the Bar rule applies equally to solicitations within thirty-days of a simple slip and fall or of accidents that result in severe injuries or fatalities.

10. The potential clients in *Shapero* were all persons against whom a foreclosure suit had been filed. In Kentucky, a defendant must file an answer within twenty days after service of a summons. Ky.R.Civ.P. 12.01. Given this time constraint, *Shapero's* letters would have needed to reach the intended recipients quickly, certainly within twenty days, or the letters' effectiveness would likely be lost entirely. Thus, in *Shapero*, the Court approved direct mail solicitations that would be sent to recipients shortly after the event that triggered the potential need for legal representation.

11. We note that Bar Rule 4–7.4(b)(1)(F) also appears designed to serve the state's interest in

protecting potential letter recipients with heightened sensitivities. That Rule prohibits direct mail solicitation of potential clients when "the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer." R. 4–7.4(b)(1)(F). This case does not present a challenge to Rule 4–7.4(b)(1)(F) and we make no comment concerning its legality. We mention it only to demonstrate the difference between a prophylactic rule like the thirty-day ban and a more narrowly tailored approach.

12. Justice Shaw of the Florida Supreme Court noted that,

This ban will effectively deprive many accident victims of information concerning the availability of professional legal assistance precisely when they need it most—during the initial period following a serious accident when they are confronted with an unintelligible legal tangle and demands to waive or compromise their rights. It is during this time that informed decisionmaking is crucial.

*Petition—Advertising Issues*, 571 So.2d at 474 (Shaw, C.J., concurring in part and dissenting in part).

these.[13] We are persuaded, however, that under Supreme Court precedent this asserted interest cannot justify a thirty-day ban on certain targeted solicitations and cannot overcome the protections afforded commercial speech under the First Amendment.

The Bar maintains that Appellee's targeted letters will invade the recipients' personal privacy and disturb the tranquility of their homes. As the Supreme Court noted in *Shapero*, "a targeted letter [does not] invade the recipient's privacy any more than does a substantively identical letter mailed at large. The invasion, if any, occurs when the lawyer discovers the recipient's legal affairs, not when he confronts the recipient with the discovery." 486 U.S. at 476, 108 S.Ct. at 1923. Similarly, the invasion of the potential client's privacy in this case occurs when the lawyer learns of the accident or tragedy with which the potential client is involved. In many cases, this invasion of privacy will involve no more than reading the newspaper.

Nonetheless, the Bar urges that we focus our inquiry on the fact that the solicitation letters in this case will enter into and intrude upon the tranquility of a potential client's home, a place traditionally afforded great protection. *See Frisby v. Schultz*, 487 U.S. 474, 483, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."). It equates the "invasion" created by the client solicitation letters in this case with that of the anti-abortion protesters banned from a doctor's front lawn in *Frisby*, and with the unavoidable loud noise blasted at homes from sound trucks in *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). We decline to place the invasion of an envelope stamped "advertising material" in red in such a category. *See Shapero*, 486 U.S. at 476, 108 S.Ct. at 1923. We also note that virtually all direct mail advertising, and most advertising of other varieties, "invades" the tranquility of the recipients' home, yet is protected by the First Amendment. We conclude, therefore, that the Bar's thirty-day ban on attorneys' direct mail solicitation of potential personal injury and wrongful death clients is not justified by its asserted interest in protecting the recipients' privacy or the tranquility of their homes.

## III.

█ The Bar alternatively maintains that we should uphold the thirty-day ban on direct mail solicitation of personal injury and wrongful death clients as a reasonable time, place, and manner restriction on speech. States may place restrictions on the time, place, and manner of constitutionally protected communication if they do so: (1) without regard to the content of the communication, (2) in a manner narrowly tailored to serve a significant governmental interest, and (3) leaving open alternative channels for communication. *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 294, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). We conclude that the Bar's Rule fails to meet the first element of the test described in *Clark*.

█ On its face the thirty-day Rule is unambiguously content-based. It applies only to letters that "concern[ ] an action for personal injury or wrongful death." R. 4–7.4(b)(1)(A). It is, then, the subject matter of the letter, a solicitation for a certain type of representation, that triggers application of the Rule.

---

**13.** *The Supreme Court addressed concerns about offensive lawyer advertising in* Zauderer, *a case that involved truthful newspaper advertising for potential Dalkon Shield litigation clients. There, the Supreme Court noted that states acting through their bar associations do have a substantial interest in ensuring that "attorneys behave with dignity and decorum in the courtroom."* 471 U.S. at 647, 105 S.Ct. at 2280. *Nonetheless, the Court was uncertain that a state's "desire that attorneys maintain their dignity in their communications with the public is an interest substantial enough to justify the abridgment of* [attorneys'] *First Amendment rights."* Id. *The Court explained that, even if that state interest could be considered substantial, it was "unpersuaded that undignified behavior would tend to recur so often as to warrant a prophylactic rule" barring all solicitation of legal employment.* Id. *Moreover, "the mere possibility that some members of the population might find advertising embarrassing or offensive cannot justify suppressing it."* Id. (citing Carey v. Population Servs. Int'l, 431 U.S. 678, 701, 97 S.Ct. 2010, 2024, 52 L.Ed.2d 675 (1977)).

The Bar nevertheless maintains that the Rule has nothing to do with the content of the proposed letter. Rather, it asserts that application of the Rule is based upon the nature of the intended recipient as an accident victim or family member. Indeed, the Bar claims that it does not need to review the content of a letter in order to determine whether or not the rule is applicable—it need only determine the source of the list of recipients of the letter. As the district court noted, however, letters soliciting the same potential client under identical circumstances for probate representation or any other purpose are permitted. The source of the list of recipients for the probate attorney's letter could be identical to that of the wrongful death attorney's letter, yet only the wrongful death solicitation would be banned under the Rule.

We conclude that the Bar would necessarily need to examine the content of the letter to determine whether the Rule applied to the attorney in question. Application of the rule, therefore, depends on the content of the letter. The Bar's assertion that the Rule is not designed to suppress the content of the letter is unavailing. The Rule is not content-neutral, either on its face or as applied. Accordingly, it is not a reasonable time, place, and manner restriction on speech.

#### IV.

Justice Powell predicted in *Bates* that recognizing First Amendment protections for attorney advertising would "effect profound changes in the practice of law, viewed for centuries as a learned profession." 433 U.S. at 389, 97 S.Ct. at 2712 (Powell, J., concurring in part and dissenting in part). That prediction has proven true. Unfortunately, the resulting changes have not necessarily been for the better. We are disturbed that *Bates* and its progeny require the decision we reach today. We are forced to recognize that there are members of our profession who would mail solicitation letters to persons in grief, and we find The Florida Bar's attempt to regulate such intrusions entirely understandable. Although the Bar may not formally restrict such behavior, an attorney's conscience, self-respect, and respect for the profession should dictate self-restraint in this area. To preserve the law as a learned profession demands as much.

For the foregoing reasons, the district court's grant of summary judgment in favor of Went For It, Inc. is

AFFIRMED.